J-S45010-18

2018 PA Super 328

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CEDRIC ANTONIO GLASS, | : | |
| | : | |
| Appellant | : | No. 130 MDA 2018 |

Appeal from the Judgment of Sentence December 13, 2017
in the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0001003-2016

BEFORE:   OTT, J., MUSMANNO, J., and PLATT*, J.

OPINION BY MUSMANNO, J.:                **FILED DECEMBER 03, 2018**

Cedric Antonio Glass ("Glass") appeals from the judgment of sentence imposed following his conviction of one count each of delivery of a controlled substance, possession with intent to deliver a controlled substance, possession of a small amount of marijuana, possession of drug paraphernalia, criminal use of a communication facility, and fleeing or attempting to elude a police officer.[1]  We affirm.

On April 19, 2016, Detectives Conrad Zech ("Detective Zech") and John Munley ("Detective Munley") (collectively, "the Detectives") met with a confidential informant ("CI") regarding the sale of cocaine in Scranton, Pennsylvania.  The CI told the Detectives that a black male, who used the name "Country," was selling cocaine in the area.  The CI additionally provided

_____

[1] **See** 35 P.S. § 780-113(a)(30), (31), (32); 18 Pa.C.S.A. § 7512; 75 Pa.C.S.A. § 3733.

_____

*   Retired Senior Judge assigned to the Superior Court.

the telephone number used by Country and a description of Glass's vehicle. The Detectives had knowledge that Glass used the name "Country." When shown a photograph of Glass, the CI identified the person in the photograph as "Country." On that same date, by telephone, Deputy District Attorney Mike Ossont ("DDA Ossont") consensualized the CI for the purpose of having the CI's telephone calls, face-to-face conversations, and text messages to and from Glass intercepted by authorities.

The next day, in the presence of the Detectives, the CI called Glass, using the provided telephone number, and arranged to purchase $100.00 worth of cocaine. After searching the CI, the Detectives provided $100.00 in pre-recorded and serialized U.S. currency, and equipped the CI with an electronic surveillance device. The CI arranged to conduct the transaction at his home on Maple Street in Scranton. Under surveillance, the CI drove to his house. After the CI entered his house, Glass telephoned the CI, and directed him to get inside of a red maroon Lincoln parked outside. The CI complied. Glass, who was inside of the Lincoln, drove the CI around the block, and thereafter dropped the CI off at the CI's house. Afterwards, the CI met with Detective Munley and surrendered a cigar/blunt-type package, with a clear plastic twist of suspected cocaine inside of the package, which the CI had purchased from Glass.

Detective Munley contacted other detectives to effectuate an arrest of Glass. A vehicle chase ensued, after which Glass crashed his vehicle. After

apprising Glass of his rights pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966), the officers searched Glass, finding $1,321.00 in U.S. currency and five grams of suspected marijuana on his person. Inside of the vehicle, the officers found the cell phone used to call the CI, a small amount of marijuana, and packaging similar to the cigar/blunt packaging used to wrap the cocaine purchased by the CI.

Prior to trial, Glass filed pre-trial Motions to suppress the evidence, which the suppression court denied. Following a bench trial, the trial court found Glass guilty of the above-described charges. The trial court sentenced Glass to an aggregate prison term of 36-84 months, followed by 2 years of special probation. Glass filed a post-sentence Motion, which the trial court denied. Thereafter, Glass filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Glass presents the following issues for our review:

A. Whether the suppression court erred when it denied [Glass's] Omnibus Pre-trial Motion to exclude/suppress all evidence derived from electronic surveillance of conversations between [Glass] and [the CI,] recorded on April 20, 2016[,] under the Wiretapping and Electronic Surveillance Control Act [(hereinafter, the "Wiretap Act")], 18 Pa.C.S.A. § 5701, *et seq.*, for the following reasons:

a. The intercept was not supported by reasonable grounds to suspect criminal activity[,] as required by 18 Pa.C.S.A. § 5704;

b. The intercept was not supported by valid consent;

    c. The intercept was based upon a defective Memorandum; and

    d. Since [Glass] had a reasonable expectation of privacy inside [of] his vehicle, a Memorandum of Approval was insufficient to support the intercept, thus, the intercept violated the [c]onstitutional protection afford[ed] under the Fourth Amendment of the U.S. Constitution[,] and Article I, Section 8 of the Pennsylvania Constitution?

B. Whether the suppression court erred when it denied [Glass's] Motion to Suppress all of the evidence obtained from his person and from the search of his vehicle since the Commonwealth did not obtain the necessary authorization for the covert audio recording device with the GPS tracker device for the following reasons:

    a. Failure to establish the required probable cause for its use[,] as mandated by [**Commonwealth**] **v. Burgos**, … 64 A.3d 641 ([Pa. Super.] 2013)[,] and 18 Pa.C.S.A. § 5761;

    b. Failure to comply with 18 Pa.C.S.A. § 5761 of the Wiretap Act[,] which, *inter alia*, requires a statutorily prescribed court order; and

    c. [The use of the devices] constituted a search based upon **United States v. Jones**, 565 U.S. 400 … (2012), thus violated the protection against unreasonable searches and seizures afforded under the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution?

C. Whether the search of [Glass's] vehicle without a warrant constituted an unreasonable search and seizure?

D. Whether the verdicts on the possession with intent to deliver, delivery of a controlled substance, and possession of a controlled substance-cocaine charges were contrary to the weight of the evidence?

E. Whether the verdicts on possession with intent to deliver, delivery of a controlled substance, and possession of a controlled substance-cocaine charges were supported by sufficient evidence?

Brief for Appellant at 4-5.

In Issue "A," Glass first challenges the suppression court's failure to exclude at trial evidence derived from the electronic surveillance of conversations between Glass and the CI. *Id.* at 21. Glass argues that the Memorandum of Approval executed by DDA Ossont, and its supporting documents, failed to establish reasonable grounds to suspect Glass of criminal activity. *Id.* at 24-25. Glass contends that the Memorandum of Approval failed to include any information establishing that Glass was involved in the distribution of controlled substances. *Id.* Glass asserts that the Memorandum of Approval failed to state that the CI previously had purchased controlled substances from Glass, or that the CI had provided accurate and reliable information in the past. *Id.* Glass contends that the Memorandum of Approval failed to identify the type or types of controlled substances that were being delivered by Glass, or when illegal activity had taken place. *Id.* at 26. Further, Glass argues, DDA Ossont merely stated that he had reviewed the Memorandum of Approval, but he provided no information upon which a finding of reasonable grounds for authorizing the wiretap could be made. *Id.* Glass acknowledges the Memorandum of Approval's statement that charges were pending against him. *Id.* However, Glass challenges the Memorandum of Approval's failure to identify the pending charges. *Id.*

When reviewing the denial of a defendant's suppression motion,

[an appellate court] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016) (citation omitted).

Glass's first claim requires this Court to interpret provisions of the Wiretap Act. Our interpretation of statutory provisions is guided by the Statutory Construction Act,[2] "under which our paramount interpretive task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011). *See also* 1 Pa.C.S.A. § 1921(a) (providing that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). "The best indication of the General Assembly's intent may be found in the plain language of the statute." *Commonwealth v. Popielarcheck*, 190 A.3d 1137, 1140 (Pa. 2018). Consequently, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see also Dep't of Transp. v.*

_____

[2] *See* 1 Pa.C.S.A. §§ 1501-1991.

*Taylor*, 841 A.2d 108, 111-12 (Pa. 2004) (cautioning that, "[a]s a general rule[,] courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose."). Additionally, our Supreme Court has recognized that expanding the terms of a statute is an act reserved for the General Assembly, and should not be accomplished through judicial action. *See, e.g., Commonwealth v. Scott*, 532 A.2d 426, 429 (Pa. 1987) (wherein the Supreme Court refused to add exceptions to the spousal witness incompetency statute, even after recognizing legitimate criticisms).

"Both the Fourth Amendment of the United States Constitution[,] and Article 1 Section 8 of the Pennsylvania Constitution[,] protect citizens from unreasonable, searches and seizures." *Burgos*, 64 A.3d at 648 (quoting *Commonwealth v. Cook*, 735 A.2d 673, 674 (Pa. 1999)). "Warrantless searches and seizures are therefore unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Burgos*, 64 A.3d at 648.

> This Court has explained that the Wiretap Act
>
> is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.
>
> However, the Wiretap Act contains an exception allowing law enforcement to utilize wiretaps without obtaining prior judicial

approval when one of the parties to the conversation consents to the interception:

### § 5704. Exceptions to prohibition of interception and disclosure of communications

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

**(2)** Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

**(ii)** one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be [initiated[3]], has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception ....

18 Pa.C.S.A. § 5704.

In determining whether the approval of a consensual wiretap was proper, ... police officers must articulate "reasonable grounds" for the monitoring and the Attorney General or the district attorney must verify [] that these reasonable grounds exist.

---

[3] In 2012, the Pennsylvania legislature changed the term "made" to "initiated." **See** Act 2012-202 (H.B. 2400), P.L. 1634, § 2, approved Oct. 25, 2012.

***Commonwealth v. McMillan***, 13 A.3d 521, 524-25 (Pa. Super. 2011) (citations and some emphasis omitted, footnote added).

As set forth above, the express language of the statute includes no requirement that the Memorandum of Understanding set forth, *in writing*, the reasonable grounds to suspect criminal activity. Rather, the statute provides that no interception is permitted "unless … an assistant district attorney … has *reviewed the facts* and is satisfied that the consent is voluntary[.]" 18 Pa.C.S.A. § 5704(2)(ii) (emphasis added). Although our Supreme Court has required that police officers "articulate 'reasonable grounds' for the monitoring," and that the reasonable grounds be verified by the designated authority, the Supreme Court did not require that the articulation be in writing, or included in the Memorandum of Understanding. ***See McMillan***, 13 A.3d at 525. Thus, Glass's contention, *i.e.*, that the Memorandum of Approval is deficient for not including the reasonable grounds relied upon for the interception, lacks merit.

In Issue A(b), Glass again argues that the CI's consent for electronic surveillance was invalid because the Memorandum of Approval was defective. Brief for Appellant at 27. Glass asserts that the CI did not consent to the electronic tracking of the CI's location. ***Id.*** Glass posits that the CI's consent was not voluntary because of this deficiency. ***Id.***

Our review of the record discloses that Detective Munley prepared the Memorandum of Approval, and received approval to use electronic surveillance

of the CI and Glass on April 19, 2016. *See* N.T., 11/28/16, at 7-8. The Memorandum of Approval, prepared by Detective Munley for DDA Ossont's signature, provided as follows:

> I, [DDA Ossont], … having been officially designated by **District Attorney Shane Scanlon**, Lackawanna County District Attorney, pursuant to Section 5704 and related sections of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, have reviewed the Memorandum of [Detective Munley], dated 3/30/2016[,] and the Memorandum of Consent signed by [the CI], I have also taken the following steps to determine whether or not the consent [of the CI] was freely given.
>
> -**Oral Interview**
>
> As a result of the foregoing, I find that the consent of the above-named person was freely and voluntarily given and that the proposed interception involves suspected criminal activities and appear [*sic*] to be otherwise in accord with the law. The proposed interception is approved and authorization is given for the issuance **of such devices as are necessary to accomplish the interception in the manner described in the Officer's Memorandum.**
>
> In regard to [] Glass, phone number [number omitted], and any other person who is under criminal charges, I have directed the officers to take particular care to avoid the interception of any conversation of that person which pertains to his culpability in relation to those pending criminal charges or the strategy which he contemplates using in his defense of those pending criminal charges.

Memorandum of Approval, 4/19/16 (some emphasis added, phone number omitted). The signature line denotes the name "Mike Ossont," followed by the words "via phone." *See id.* The Officer's Memorandum, completed by Detective Munley, expressly requested authorization for "cellular phone, induction microphone and digital recorder[,]" and "Sure-Tec digital audio

transmitter recorder" (the "Sur-Tec device"). Officer's Memorandum, 4/19/16, at 1.

According to Detective Munley's testimony at the suppression hearing, he specifically explained to the CI that the Sur-Tec device would show the location of that device to the investigators, and that the CI was consensualized regarding its intended use. N.T., 4/4/17, at 4. According to Detective Munley, the location tracking system was used for the safety of the CI. *Id.* Detective Munley testified that the tracking system showed the location of the device in real time, but did not make a record of its location. *Id.* at 4-5.

Thus, our review discloses that the Memorandum of Approval encompassed surveillance devices, as set forth in the Officer's Memorandum. *See* Memorandum of Approval, 4/19/16. The Officer's Memorandum specifically identified the Sur-Tec device as one of the devices to be used in the surveillance of the CI. *See* Officer's Memorandum, 4/19/16, at 1. Further, the record reflects that Detective Munley explained the location-tracking feature of the Sur-Tec device to the CI, who then consented to being equipped with the Sur-Tec device. *See* N.T., 4/4/17, at 4. Under these circumstances, Glass's challenge to the use of the Sur-Tec device's tracking system lacks merit.

In Issue A(c), Glass argues that the Memorandum of Approval is defective, because it lacked the personal signature of DDA Ossont. Brief for Appellant at 27. In this regard, Glass points out that the Officer's

- 11 -

Memorandum was misdated for March 30, 2016, and Detective Munley admitted that he had used a template when completing the Officer's Memorandum. *Id.* at 28. According to Glass, "[t]he use of a template eviscerates the specific and detailed analysis of the purported criminal activity[,] as is required by the statute and appellate courts' application of this exception." *Id.* Glass further takes exception to DDA Ossont's use of a telephone interview of the CI, instead of an in-person interview. *Id.* Glass also challenges DDA Ossont's failure to personally sign the Memorandum of Approval. *Id.* Glass compares the facts in this case to those presented in *Commonwealth v. Clark*, 542 A.2d 1036 (Pa. Super. 1988).

In *Clark*, this Court addressed, *inter alia*, whether the provisions of Section 5704(2)(ii) had been followed where neither the district attorney nor the designated district attorney had reviewed the facts and indicated that the consent was voluntary. *See Clark*, 542 A.2d at 1038. This Court explained that

> [t]he responsibilities outlined in the Act regarding the duties of the Attorney General, District Attorney or their designee are non-delegable. **Those persons responsible for authorizing interceptions under the Act must personally review the facts, ascertain directly from the consenting party the voluntariness of his or her consent and give prior approval to the interceptions.**

*Id.* at 1040 (emphasis added). This Court upheld the suppression of the intercepted communications, where a statutorily designated person "never

- 12 -

performed these preparatory duties. Rather, these duties were wrongly delegated to and undertaken by the Pennsylvania State Police." *Id.*

By contrast, in the instant case, the Commonwealth presented ample evidence that ADA Ossont had reviewed the details of the case with Detective Munley, and was satisfied that the consent was voluntary. Detective Munley testified that he had telephoned DDA Ossont, "explained the details of the case, the details of the interview with the CI, who we were going to call, what phone number we were going to call, the drugs we were going to purchase[,] and the details of the [Memorandum of Approval]. That was approved via phone …." N.T., 11/28/16, at 8. Detective Munley further confirmed that DDA Ossont had spoken directly with the CI, and personally had consensualized the CI over the telephone. *Id.* at 18. Finally, DDA Ossont specifically authorized Detective Munley to place DDA Ossont's signature on the Memorandum of Approval. *Id.*

The record establishes that DDA Ossont performed in accordance with the statute by personally reviewing the facts, ascertaining directly from the CI the voluntariness of his/her consent, and approving the interceptions.[4] *See Clark*, 542 A.2d at 1040. Thus, Glass's claim in this regard lacks merit.

_____

[4] While we acknowledge that the statute did not *require* that DDA Ossont interview the CI in person, or personally place his signature on the Memorandum of Approval, we would recommend that the better practice would be to ascertain the CI's consent in person, and to personally sign the Memorandum of Approval.

In Issue A(d), Glass claims that, "since he had a reasonable expectation of privacy inside of his vehicle, a Memorandum of Approval was insufficient to support the intercept[.]"  Brief for Appellant at 32.  According to Glass, the electronic surveillance was not in compliance with Section 5704(2)(ii), and, therefore, the interception of the CI's communication with Glass violated the United States and Pennsylvania Constitutions.  *Id.*  Glass further asserts that, because he had a subjective expectation of privacy, and his expectation was reasonable, the interception of any communications taking place inside of the vehicle violated Article I, Section 8 of the Pennsylvania Constitution.  *Id.* at 33.  Therefore, Glass asserts, all evidence seized as a result of the surveillance must be suppressed as the "fruits of the poisonous tree."  *Id.* at 34.

In the seminal case of ***Commonwealth v. Blystone***, 549 A.2d 81 (Pa. 1988),[5] the Pennsylvania Supreme Court addressed the constitutionality of a warrantless recording, made by a confidential informant, while inside of the defendant's truck.  *Id.* at 86.  The defendant argued that the warrantless consensual monitoring, as authorized by Section 5704(2)(ii), violated his rights as guaranteed by Article I, Section 8 of the Pennsylvania Constitution.  *Id.*  The ***Blystone*** Court acknowledged that the broader protection extended under the Article I, Section 8, extends to "to those zones where one has a reasonable expectation of privacy."  ***Blystone***, 549 A.2d at 87.

---

[5] ***Blystone*** was affirmed on other grounds by ***Blystone v. Pennsylvania***, 494 U.S. 299 (1990).

Notwithstanding, our Supreme Court upheld the constitutionality of Section 5704(2)(ii), opining that the defendant had no reasonable expectation of privacy once he had chosen to disclose his confidence to an informant. *Id.* at 87-88.

Here, Glass not only chose to disclose his confidence to the CI, he did so after voluntarily inviting the CI into his vehicle. As our Supreme Court has long recognized, "one's expectation of privacy with respect to an automobile is *significantly* less than that relating to one's home or office." **Commonwealth v. Holzer**, 389 A.2d 101, 106 (Pa. 1978) (emphasis in original); **accord Commonwealth v. Bosworth**, 456 A.2d 661, 663-64 (Pa. Super. 1983). As in **Blystone**, once Glass opened the automobile to the CI, he risked that everything taking place within the vehicle would be recorded and given to the Detectives. Glass therefore relinquished his reasonable expectation of privacy, and the protections of the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. Accordingly, Glass is not entitled to relief on this claim.

In Issue (B), Glass claims that the Commonwealth failed to obtain the necessary authorization for the Detectives' use of a covert audio recording device that included a GPS location tracker. Brief for Appellant at 35. Glass relies on this Court's holding in **Burgos**, Section 5761, and the decision of the United States Supreme Court in **Jones** to support his claim. Brief for Appellant at 35. Glass posits that, "[a]lthough the device used in the present matter

was a Sur-Tec device that includes GPS tracking capabilities, and was not a device which permits the tracking only of the movement of a person or object, … the dual capabilities of the device should not preclude the application of the requirements of Section 5761 [of the Wiretap Act]." *Id.* at 37.

Once again, we are called upon to interpret provisions of the Wiretap Act. Section 5761 pertaining to the use of mobile tracking devices, provides, in relevant part, as follows:

**§ 5761. Mobile tracking devices.**

**(a) Authority to issue.** — Orders for the installation and use of mobile tracking devices may be issued by a court of common pleas.

* * *

**(c) Standard for issuance of order.** — An order authorizing the use of one or more mobile tracking devices may be issued to an investigative or law enforcement officer by the court of common pleas upon written application. Each application shall be by written affidavit, signed and sworn to or affirmed before the court of common pleas. The affidavit shall:

**(1)** state the name and department, agency or address of the affiant;

**(2)** identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items;

**(3)** state the jurisdictional area in which the vehicles, containers or items are expected to be found; and

**(4)** provide a statement setting forth all facts and circumstances which provide the applicant with probable cause that criminal activity has been, is or will be in progress and that the use of a

mobile tracking device will yield information relevant to the investigation of the criminal activity.

18 Pa.C.S.A. § 5761(a), (c). The term "tracking device" is defined by the Wiretap Act as "[a]n electronic or mechanical device which permits **only** the tracking of the movement of a person or object." *Id.* § 5702 (emphasis added).

As Detective Munley explained during the suppression hearing, the Sur-Tec device is "a recording device **and** a GPS device." N.T. (Suppression), 4/4/17, 4 (emphasis added). The Sur-Tec device did not record the path in which the recorder was taken. *Id.* The Sur-Tec device tracked the location of the CI, "for safety purposes." *Id.* The Sur-Tec device was not attached to Glass's car, but consensually placed "on the CI's person." *Id.*

Thus, the Sur-Tec device is not a "tracking device," pursuant to Section 5702, because it did not "only" track "the movement of a person or object." *See* 18 Pa.C.S.A. § 5702. We cannot disregard the legislature's use of the term "only," in defining a "tracking device." 1 Pa.C.S.A. § 1921(b); *see also Taylor*, 841 A.2d at 111-12 (cautioning that, "[a]s a general rule[,] courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose.").

In addition, Glass's reliance upon this Court's decision in *Burgos* affords him no relief. In *Burgos*, the Commonwealth challenged the grant of a suppression motion, where evidence was derived from the use of a GPS device placed on the defendant's automobile. *Burgos*, 64 A.3d at 643. The

- 17 -

defendant sought suppression based upon the decision of the United States Supreme Court in **Jones**.[6] This Court agreed that the attachment and monitoring of a GPS device on the defendant's vehicle constituted a "search" under the Fourth Amendment to the United States Constitution. **Burgos**, 64 A.3d at 652. This Court further agreed that police officers "needed probable cause to install and monitor the GPS tracker to the [defendant's] car." **Id.** Ultimately, this Court concluded that the wiretap order secured by police served the functional equivalent of a traditional search warrant. **Id.** at 655.

Here, the Detectives did not attach a GPS device to Glass's automobile. Rather, the CI carried a Sur-Tec device, which recorded audio and included location tracking for the informant's safety. Unlike the facts in **Burgos**, the Sur-Tec device did not track Glass or his vehicle. Rather, it recorded the audio and location *of the CI*, and the CI had consented to its use. Thus, the circumstances presented in **Burgos** are clearly distinguishable from those in the instant case.

Because the Sur-Tec device is not a "tracking device," as defined by the Wiretap Act, the requirements of 18 Pa.C.S.A. § 5761, which pertain to mobile "tracking devices," are inapplicable, and Glass's contention in this regard lacks merit. **See** 18 Pa.C.S.A. § 5702 (defining "tracking devices").

---

[6] In **Jones**, the United States Supreme Court held that the government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constituted a "search" under the federal Constitution. **Jones**, 565 U.S. at 404.

In Issue (C), Glass argues that detectives' search of his vehicle constituted an illegal search pursuant to the Pennsylvania and United States Constitutions. Brief for Appellant at 44. Glass contends that the authorities lacked probable cause to search his vehicle pursuant to the vehicle exception to the search warrant requirement. *Id.* at 45. Because authorities did not first secure a search warrant, Glass asserts, the evidence seized from the vehicle must be suppressed. *Id.*

Both the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution generally require that, prior to conducting a search of an individual or his or her property, the police must obtain a warrant, supported by probable cause and issued by a neutral magistrate. *Commonwealth v. Arter*, 151 A.3d 149, 153 (Pa. 2016). "This rule is subject to limited exceptions, such as the existence of exigent circumstances." *Id.*

With respect to a warrantless search of a vehicle, Pennsylvania's law is "coextensive" with federal law under the Fourth Amendment of the U.S. Constitution. In *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (opinion announcing the judgment of the court), the Pennsylvania Supreme Court adopted the federal automobile exception to the warrant requirement, which allows officers to search a motor vehicle when there is probable cause to do so, and does not require any exigency beyond the inherent mobility of the

motor vehicle. *Id.* at 104. Therefore, "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search." *Id.* at 138.

Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense. *Commonwealth v. Runyan*, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted). "The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." *Id.* The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances." *Id.*

In its Opinion, the suppression court found that the requirements of the automobile exception had been met:

> A controlled purchase of narcotics was set up between the CI and [Glass] using intercepted communications. [The] Detectives observed the CI as the alleged narcotics transaction took place. [Glass] fled the scene once officers attempted to take him into custody. During the search of his person incident to arrest, [d]etectives located currency[,] which did not include the prerecorded "buy" money[,] and suspected marijuana. Officers had probable cause to believe that evidence of the narcotics transaction, specifically the "buy money[,] was located within [Glass's] vehicle….

Suppression Court Opinion, 8/23/17, at 11. The suppression court's findings are supported in the record. *See id.* Thus, under the totality of the circumstances, the search of the vehicle was supported by the requisite probable cause. Consequently, we cannot grant Glass relief on his claim.

In Issues (D), Glass claims that the trial court's verdicts as to the charges of possession with intent to deliver and possession of controlled substances were contrary to the weight of the evidence. Brief for Appellant at 46. According to Glass, the authorities lacked probable cause to arrest him. *Id.* at 48. Again, Glass claims that the probable cause to arrest him was "entirely insufficient from [authorities'] failure to investigate him beyond what the [CI] provided and because of the illegal interception of audio from the device place[d] on the [CI]." *Id.* Glass posits that "[i]f this evidence is suppression, … the guilty verdicts were contrary to the evidence." *Id.* Glass analyzes the evidence excluding the intercepted communications to argue that the verdict is against the weight of the evidence. *See id.* at 48 (arguing that no witnesses observed Glass throw contraband, and no cocaine or buy money was found on his person).

As this Court has recognized, "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015). Therefore,

> [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict

was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 545-46 (citation omitted).

As set forth above, we discern no error by the suppression court in denying Glass's Motion to suppress the evidence. Thus, Glass's challenge to the weight of the evidence, premised upon the suppression of the evidence secured as a result of the audio interception, fails.

Finally, Glass challenges the sufficiency of the evidence underlying his convictions. In reviewing a claim challenging the sufficiency of evidence, we determine whether,

> viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

In support of his challenge, Glass points out that in the intercepted audio recording, Glass agreed to sell, for $100.00, a "soft" item. Brief for Appellant at 50. Although the CI testified that the term "soft" meant that it was not "cooked," Glass argues that the CI did not identify the item. *Id.* Glass further argues that the officers did not see an exchange of drugs between the CI and Glass, and the "buy money" was not found on Glass. *Id.* Therefore, Glass asserts, the evidence is not sufficient to sustain his conviction. *Id.*

In its Opinion, the trial court addressed Glass's challenge to the sufficiency of the evidence, and concluded that it lacks merit. *See* Trial Court Opinion, 3/6/18, at 3-5. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to Glass's challenge to the sufficiency of the evidence. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/03/2018