J-S22013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
DARNELL HAROLD KELLAM :
:
Appellant : No. 1149 MDA 2018

Appeal from the Judgment of Sentence Entered June 20, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000386-2017

BEFORE: SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY SHOGAN, J.: **FILED: JULY 10, 2019**

Appellant, Darnell Harold Kellam, appeals from the judgment of
sentence entered following his convictions of persons not to possess firearms,
firearms not to be carried without a license, and possession with intent to
deliver (heroin).[1] We affirm.

On February 10, 2017, following the stop of his automobile for a motor
vehicle code violation, police charged Appellant with one count each of the
crimes stated above, as well as one count of receiving stolen property. On
April 19, 2017, Appellant filed a motion to suppress evidence obtained from
the warrantless search of his automobile. A hearing was held on June 20,
2017, and, on July 18, 2017, the suppression court denied Appellant's motion.

_____

[1] 18 Pa.C.S. §§ 6105, 6106, and 35 P.S. § 780-113(a)(30), respectively.

_____

* Retired Senior Judge assigned to the Superior Court.

Appellant proceeded to a nonjury trial on March 5, 2018, at the conclusion of which the trial court found him guilty of all charges except receiving stolen property. On June 20, 2018, the trial court sentenced Appellant to serve an aggregate term of incarceration of five to ten years. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

I. Did the lower court err by denying Appellant's motion to suppress evidence based on a finding of the existence of probable cause to support the warrantless search of Appellant's vehicle?

Appellant's Brief at 4.

Appellant argues that the suppression court erred in failing to suppress the physical evidence retrieved following the search of his automobile. Appellant's Brief at 10-15. Appellant contends that the court erred in concluding that the police officer had probable cause to effectuate the warrantless search of Appellant's vehicle. We disagree.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

Concerning a warrantless search of a vehicle, Pennsylvania law is "coextensive" with federal law under the Fourth Amendment of the United States Constitution. *Commonwealth v. Gary*, 91 A.3d 102, 120 (Pa. 2014) (plurality). In *Gary*, a plurality of our Supreme Court held that "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is

required." ***Id***. at 138. Thus, we must determine whether the officer had probable cause to search Appellant's vehicle.

Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense. ***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted). "The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." ***Id***. The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances." ***Id***.

The suppression court summarized the facts surrounding this matter as follows:

> At the time of [Appellant's] arrest [on February 10, 2017], [Officer Joshua] Bell had over five years of experience as a law enforcement officer with the Williamsport Bureau of Police, having joined the Bureau in August of 2011. Bell had additional law enforcement experience prior to his tenure with the Williamsport police, including narcotic agent training through the Attorney General's office and significant experience with narcotic interdiction policing.
>
> On February 10, 2017, Bell was operating a marked patrol car and was patrolling the area of Campbell Street and High Street when he observed a black Nissan Altima travelling south on Campbell Street. Bell observed that the vehicle was equipped with heavy window tint which prevented him from observing the interior of the vehicle. Bell recognized that the color, make, and model of the car, along with the heavy window tint, matched the description of a vehicle that a confidential informant had previously indicated was involved in trafficking heroin from Philadelphia to Williamsport. The confidential informant who shared this information with Bell had made a number of controlled

- 4 -

purchases for Bell in the past during his narcotic interdiction efforts. Bell's prior interdiction efforts had a strong record of corroborating the information obtained from this informant.

Bell effected a vehicle stop due to the heavy window tint on the vehicle in the area of Market Street and Little League Boulevard. Upon talking with [Appellant] and collecting [Appellant's] license, vehicle registration, and insurance, [Bell] verified that the driver was the owner of the vehicle, and that the area of registration was Philadelphia.

While Bell was speaking to [Appellant] from outside of the driver's side window, Bell's attention was drawn to several rubber bands hanging from the windshield wiper control arm. Bell recognized from his experience in narcotics trafficking investigations that these rubber bands were often used to bundle large amounts of money, and that in his experience, a vehicle control arm is a common location for drug traffickers to keep such rubber bands. Bell later testified that he had encountered rubber bands fashioned this way in vehicle stops that have led to arrests between eight and ten times prior to his encounter with [Appellant] in the present case.

When Bell asked [Appellant] what the rubber bands were for, he responded that he just "had them," and that Bell was the first officer who ever asked him about the rubber bands. Bell asked [Appellant] where he was coming from, to which [Appellant] responded that he had been visiting family. Bell asked [Appellant] where his family lived, and [Appellant] responded "Louisa." Motor Vehicle Recording (MVR) at 4:09. Bell asked [Appellant] what block of Louisa his family lived on, and [Appellant] responded, "Right there where everything be happening." Id. at 4:18. Bell recognized the area [Appellant] was referring to as the area colloquially known as the "400 block," an area known for its high criminal drug activity. Bell asked [Appellant] for confirmation, whether he was talking about the 400 block, and [Appellant] confirmed it. Id. at 4:21.

Bell returned to his patrol car with [Appellant's] license and vehicle documentation, and proceeded to contact county control to conduct a criminal history inquiry of [Appellant]. At this time, another officer with the Williamsport Bureau of Police arrived at the scene. Dispatch advised Bell that [Appellant] had been arrested multiple times in the past several years for firearms

violations and narcotics violations. Bell returned to [Appellant's] vehicle and asked [Appellant] to step out of the vehicle. [Appellant], Officer Bell, and the second officer relocated to a space in between the two marked patrol cars.

Bell proceeded to advise [Appellant] that … he was aware of [Appellant's] criminal history, and made [Appellant] aware of his concern that [Appellant] had either firearms or narcotics on his person or in his vehicle. Bell asked [Appellant] if he was in possession of any narcotics or firearms either on his person or in his vehicle, and [Appellant] responded that he was not. Bell then asked [Appellant], "Alright, is there any issue with me looking?" while pointing at [Appellant's] vehicle, and [Appellant] replied, "Nope." MVR at 18:35.

Taking [Appellant's] response as consent to perform a vehicle search, Bell began walking towards the passenger compartment of [Appellant's] vehicle. When [Appellant] asked Bell if he could return to his vehicle, Bell directed [Appellant] to stand next to the second officer on the scene while he performed the search. As Bell continued to approach the driver door of [Appellant's] vehicle, [Appellant] said, "Oh, you're gonna check the car?" to which Bell responded, "Yeah." MVR at 18:40.

During the search, Bell observed that [Appellant] was in possession of three cellular phones, which he recognized as an additional indicia of drug sale activity. Bell also observed that the headliner of the vehicle appeared as though it had previously been pulled away from its corresponding connection point with the roof of the vehicle. Bell knew from previous narcotics investigations that the inside of a vehicle's headliner is a common location to conceal contraband.

Finally, Bell exited the driver's side door of the vehicle, walked around the vehicle, and began searching via the passenger's side door. Bell observed that part of the panel of the center console was loose and appeared to have been previously removed. Bell pulled on the panel slightly, causing it to fall off. Concealed under the air vent, Bell located a firearm and identified its serial number. Dispatch advised Bell that the firearm, a .40 caliber Ruger pistol, had been reported stolen out of Milton, Pennsylvania. In the same area where he located the pistol, Bell also found a green bag containing a clear sandwich bag, which Bell recognized as being commonly used as a distribution bag for

controlled substances. Bell proceeded to take [Appellant] into custody.

Once in custody, a search of [Appellant] incident to arrest yielded three blue wax bags of heroin in [Appellant's] left sock, $1,100 concealed in [Appellant's] underwear, an additional $125 in [Appellant's] pockets, and packages of black rubber bands often used to bundle heroin for sale in [Appellant's] shoe.

Opinion and Order, 7/18/17, at 1-5.

In concluding that Officer Bell possessed probable cause to conduct a warrantless search of Appellant's vehicle, the suppression court offered the following succinct analysis:

[I]n the present case, there are several important characteristics of the interaction between Officer Bell and [Appellant] that necessitate a finding by this [c]ourt that the probable cause present exceeded the threshold requirement to effect a vehicle search based on probable cause. First, Officer Bell had significant tenure and specialized training as a narcotics interdiction officer. Second, Officer Bell received a tip from a dependable confidential informant which corroborated all of the details of the car, including its place of registration. Third, Officer Bell further recognized the rubber bands, and he was familiar with the purpose of the rubber bands as objects often used to wrap bundles of currency obtained through drug transactions. Fourth, [Appellant] advised Officer Bell that he was coming from the an [sic] area of Williamsport known for its significant volume of narcotic crime. Fifth, and finally, Officer Bell received information from dispatch which showed [Appellant's] extensive criminal record, including charges for both drugs and firearms. The criminal background that Officer Bell discovered corroborated what he would have expected of the driver of the car that matched the description received from the officer's dependable confidential informant.

Because sufficient probable cause existed to negate the warrant requirement to search [Appellant's] car, this [c]ourt must find that Officer Bell's search of [Appellant's] car was lawful, violating neither the Fourth Amendment of the United States Constitution nor Article I, Section 8 of the Pennsylvania

Constitution and that the contraband discovered as a result need not be suppressed.

Opinion and Order, 7/18/17, at 13-14.

Likewise, our review of the certified record reflects that, under the totality of the circumstances, the police officer had probable cause to search Appellant's vehicle without a warrant. Specifically, a credible informant alerted Officer Bell to illegal narcotics activity being conducted by a vehicle fitting the description of the one being operated by Appellant. N.T., 6/20/17, at 5, 9. In addition, Officer Bell observed indications of narcotics trafficking, such as rubber bands hanging on the steering column, heavily tinted windows, and the presence of multiple cell phones in the vehicle. *Id*. at 11-12, 14, 16, 22. Also, Appellant told Officer Bell that he was coming from Louisa Street, an area which is known as a narcotics trafficking area, as well as for "officer safety issues." *Id*. at 17. Finally, Officer Bell requested a criminal history check on Appellant, which returned information regarding Appellant's prior involvement with narcotics trafficking and firearms violations. *Id*. at 19-20. Under the totality of these circumstances, we conclude that the suppression court had sufficient basis to find that Officer Bell had probable cause to believe that Appellant had committed or was committing an offense. Hence, pursuant to *Gary* and *Runyan*, the warrantless search of the vehicle was proper.

Accordingly, it is our determination that the suppression court properly denied Appellant's motion to suppress the physical evidence found in the vehicle. Hence, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/2019