COMMONWEALTH of Pennsylvania,
Appellant

v.

Dawna J. RUNYAN

No. 1498 WDA 2016

Superior Court of Pennsylvania.

Submitted March 20, 2017

Filed April 20, 2017

the Commonwealth has neither raised nor preserved such a claim for our review.

Robert H. Hartley, Jr., Assistant District Attorney, Mercer, for Commonwealth, appellant.

Lauren L. Hackett, Public Defender, Mercer, for appellee.

BEFORE: PANELLA, STABILE, JJ., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:

■ Appellant, the Commonwealth of Pennsylvania, appeals from the September 7, 2016, order granting the suppression motion filed by Appellee, Dawna J. Runyan.[1] Following our careful review of the record and the law, we reverse and remand.

Appellee was charged with three counts of possession of drug paraphernalia, 35 P.S. § 780–113(a)(32), and with the assistance of counsel, she filed an omnibus pretrial motion seeking to suppress physical evidence seized by the police. On September 7, 2016, the matter proceeded to a suppression hearing, at which the sole testifying witness was Police Officer Erick A. Gatewood on behalf of the Commonwealth.

Specifically, Officer Gatewood testified that he has been an officer with the Farrell Police Department since January of 2016, and prior to that, he was an officer with the Southwest Regional Police Department for nine years. N.T., 9/7/16, at 3–4. Officer Gatewood has experience, in addition to his normal duties, with the Mercer County Drug Task Force and the Community Emergency Response Team. *Id.* at 4.

On August 27, 2015, Officer Gatewood, who was on patrol with Officer Douglas Farley, was in full uniform and driving a marked cruiser. *Id.* At approximately 12:32 a.m., the officers were patrolling in the area of a local bar, Razzcal's, which is located in a high crime area, known for gang violence, drug violence, and drug sales. *Id.* at 4–5. Officer Gatewood testified that, on many occasions, the police have arrested drug users and sellers in occupied vehicles parked around Razzcal's. *Id.* at 5.

Officer Gatewood observed a sedan parked on the west side of the building that had four occupants in it. *Id.* Officer Gatewood and his partner parked behind Razzcal's, on the southwest side of the building, and walked up to the occupied vehicle to "check out…what was going on[.]" *Id.* Officer Gatewood approached on the passenger's side of the vehicle, while Officer Farley approached on the driver's side of the vehicle. *Id.* Neither officer approached with their weapons drawn, although Officer Gatewood was using his flashlight since it was dark. *Id.*

---

* Former Justice specially assigned to the Superior Court.

1. The Commonwealth may appeal an interlocutory order suppressing evidence where, as here, the Commonwealth provides a certification within its notice of appeal that the order terminates or substantially handicaps the prosecution. *Commonwealth v. Whitlock*, 69 A.3d 635, 636 n.2 (Pa.Super. 2013); Pa.R.A.P. 311(d).

Officer Gatewood saw a female, later identified as Kayla Fair, sitting in the driver's seat, and a male, later identified as James West, sitting in the front passenger seat. *Id.* at 6. A female, later identified as Appellee, was sitting in the back passenger seat on the driver's side, while another female, later identified as Rosemary Funk, was sitting in the back passenger seat on the passenger side. *Id.* at 6, 8.

As Officer Gatewood approached the vehicle he "detected the odor of burnt marijuana coming from the area around the vehicle." *Id.* at 6. In response, Officer Gatewood "walked up to the passenger side and [ ] looked into the vehicle[.] [He] observed a small bag of what appeared to be marijuana on the back seat passenger side floor." *Id.* Officer Gatewood testified that he has "dealt with marijuana regularly since [he has] been a patrol officer for ten years. [He] couldn't even imagine how many times [he has] dealt with it or recovered it or seized it." *Id.* at 7.

The officers brought the existence of the baggie of marijuana "to the attention of the occupants." *Id.* In response, the driver "tried crawling into the back seat, between the seats, . . . and then she tried to exit the vehicle." *Id.* Officer Gatewood indicated that the other occupants did not make any kind of movement. *Id.*

At this point, "[b]ecause of the driver['s] reaction and the possibility of marijuana being in the car," the officers asked the occupants to exit the vehicle. *Id.* The officers handcuffed each occupant and detained them behind the vehicle. *Id.* Officer Gatewood testified that he then searched the vehicle. Specifically, he testified as follows:

[ADA]: And then what did you do?

[Officer Gatewood]: Because I seen [*sic*] the marijuana in the vehicle, I searched the vehicle.

[ADA]: And what was the result of your search?

[Officer Gatewood]: I recovered the baggie of marijuana, the suspected marijuana, and then there were several purses in the vehicle, which I removed and I searched them.

[ADA]: And did you find out whose purses belonged to who? How did that happen?

[Officer Gatewood]: I searched the one purse, which was [Appellee's] purse[.]

[ADA]: Okay.

[Officer Gatewood]: And I found a spoon and a syringe and a suspected crack pipe.

[ADA]: I am sorry, I heard a spoon, a syringe, and a what?

[Officer Gatewood]: A suspected crack pipe.

*Id.* at 9–10.

Officer Gatewood indicated that the spoon had white residue on it, and based on his training and experience, he believed the items found in Appellee's purse to be drug paraphernalia. *Id.* at 10. Moreover, Officer Gatewood testified that he found another purse in the vehicle, which contained identification for "Tiffany Runyan." *Id.* This purse contained two syringes and a spoon that had white residue on it. *Id.* Officer Gatewood testified that, at this point, he placed Appellee under arrest. *Id.*

On cross-examination, Officer Gatewood clarified that he seized the purses from the back seat of the vehicle and searched the purses outside of the vehicle. *Id.* at 14. After he searched the purses and removed the suspected drug paraphernalia, he placed the purses in the vehicle's trunk. *Id.* Officer Gatewood confirmed that he searched the purses without consent or a search warrant. *Id.* at 14–15. He testified that he searched the purses because he believed they contained drug parapherna-

lia, which the occupants had used in connection with the marijuana. *Id.* at 15. Specifically, he indicated that, since he did not find a marijuana pipe in the vehicle, he believed it was in one of the purses. *Id.*

Immediately following the hearing, the suppression court dictated its findings of fact and conclusions of law and granted the motion to suppress. *Id.* at 19–23. The Commonwealth filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) statement. The lower court responded with a brief statement indicating that it was relying upon its factual findings and conclusions of law as dictated on the record at the conclusion of the suppression hearing.

The Commonwealth presents the following issues for our review:

1. Whether the lower court erred in suppressing evidence after finding that the evidence, which officers found in a purse left in a vehicle, was obtained pursuant to an unlawful search incident to arrest, as the defendant was not under arrest when evidence was uncovered and the officer had probable cause to conduct a vehicle search, which included containers within the vehicle?

2. Whether the lower court erred in distinguishing *Commonwealth v. Gary*, [625 Pa. 183, 91 A.3d 102 (2014) (plurality)] after concluding that the automobile exception does not include containers within the vehicle, as containers that could reasonably be believed to contain the object of the search may lawfully be searched where probable cause is present, and in the instant case officers had the requisite probable cause to conduct a search?

Commonwealth's Brief at 4.

Our standard of review of a lower court's order granting a defendant/appellee's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 56 A.3d 1276, 1278–79 (Pa.Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

*Commonwealth v. Korn*, 139 A.3d 249, 252–53 (Pa.Super. 2016).

"Here, as noted *supra*, Appellee presented no witnesses, and the Commonwealth presented one. Therefore, the Commonwealth's evidence is uncontradicted." *Commonwealth v. Petty*, 157 A.3d 953, 955, 2017 WL 943259, *2 (Pa.Super. 2017) (citing *Commonwealth v. Smith*, 979 A.2d 913, 917–18 (Pa.Super. 2009) (The "Commonwealth's evidence is essentially uncontradicted" because the defense did not present any witnesses at the suppression hearing.)).

With regard to the conclusions of law based on the evidence, the suppression court specifically held as follows:

> This Court distinguishes *Commonwealth v. Gary*, [625 Pa. 183,] 91 A.3d

102 (2014) [ (plurality) ], in this case in that *Gary* stands for the law that warrantless searches of automobiles are allowed so long as police have probable cause. However, in this case, the search went further than the vehicle; it went to the purses that were inside the vehicle.

This Court finds that *Commonwealth v. Shiflet*, [543 Pa. 164,] 670 A.2d 128 (1995), is more on point. The holding from *Shiflet* is as follows: The warrantless search of purses of passengers of a vehicle is not justified by the search incident to arrest exception. In the within matter, [the occupants] were all handcuffed and detained behind the vehicle. They were not asked for consent to search the purse nor was a search warrant obtained. The search of the purse was unlawful pursuant to [ ] *Shiflet* in that the search was not justified by the search incident to arrest exception.

N.T., 9/7/16, at 22–23.

On appeal, the Commonwealth emphasizes that the police did not search Appellee's purse incident to an arrest. Rather, the Commonwealth argues the police properly searched the vehicle and Appellee's purse pursuant to our Supreme Court's decision in *Gary, supra*, as well as this Court's decision in *In re I.M.S.*, 124 A.3d 311 (Pa.Super. 2015). That is, the Commonwealth submits that since the officers had probable cause to search the vehicle the search properly included Appellee's purse in which the contraband sought could be concealed. For the reasons discussed *infra*, we agree with the Commonwealth.

As this Court recently explained:

In *Gary, supra*, the Pennsylvania Supreme Court switched course from its earlier mid–1990's cases that provided greater protections to citizens of Pennsylvania in their automobiles. It aligned Pennsylvania jurisprudence with the United States Supreme Court's interpretation of the Fourth Amendment with regard to vehicle searches. In *Gary*, Philadelphia police observed a vehicle with tinted windows that they believed violated the Motor Vehicle Code. After stopping the automobile, the police detected the smell of marijuana emanating from the vehicle. Gary told police that there was marijuana in the car and police summoned a canine unit to conduct a sniff of the vehicle. Gary, who had been placed in the back of a police cruiser, then attempted to flee but was captured. Police found two pounds of marijuana under the front hood of the car.

Gary unsuccessfully litigated a suppression motion and was found guilty of possession with intent to deliver marijuana. This Court reversed and remanded for a new trial, concluding that, because Gary was in custody at the time of the search of the automobile, no exigent circumstances existed for the search. The Pennsylvania Supreme Court reversed this Court, finding that the only exigent circumstance required of an automobile is its mobility. Thus, it held that, where police possess probable cause to search a car, a warrantless search is permissible.

*In re I.M.S.*, 124 A.3d at 316–17. *See Gary*, 625 Pa. at 242, 91 A.3d at 138 ("Our review reveals no compelling reason to interpret Article I, Section 8 of the Pennsylvania Constitution as providing greater protection with regard to warrantless searches of motor vehicles than does the Fourth Amendment. Therefore, we hold that, in this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency be-

yond the inherent mobility of a motor vehicle is required.").[2]

After the filing of our Supreme Court's decision in *Gary, supra,* this Court examined whether Pennsylvania's adoption of the federal warrantless automobile exception should also require the adoption of federal precedent, namely, *Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999),[3] such that a search of the vehicle may include containers belonging to passengers in the vehicle.

Specifically, in *In re I.M.S., supra,* this Court was presented with the issue of whether the police properly searched a juvenile passenger's drawstring bag which was located on the backseat floor of a vehicle. The vehicle had been stopped as a result of an inoperable driver's side headlight, and during the course of the traffic stop, the driver admitted that his juvenile passenger had been smoking marijuana in the car and he was unsure if the juvenile's drawstring bag contained marijuana. *Id.* at 311, 119 S.Ct. 1297. The officer removed the juvenile from the vehicle, and as he did so, he noticed marijuana flakes on the juvenile's shirt and pants; he also detected an odor of burnt marijuana. *Id.* at 311–12, 119 S.Ct. 1297. In the process of searching the vehicle, the police also seized from the vehicle and searched the juvenile's drawstring bag, finding marijuana and drug paraphernalia therein. *Id.* at 312, 119 S.Ct. 1297.

The juvenile in *In re I.M.S., supra,* filed a motion to suppress, and the suppression court ruled that *Gary, supra,* extended to permit the officer to search a passenger's belongings. The juvenile appealed from the eventual entry of a dispositional order adjudicating him delinquent for possession of marijuana and drug paraphernalia. On appeal, the juvenile argued the suppression court erred in denying his motion to suppress.

In rejecting the juvenile's challenge to the suppression court's ruling, we held:

> The *Gary* Court,...did not face the situation where a passenger was also in the automobile and whether probable cause to search the car also authorized a search of a passenger's belongings therein. However, in light of the *Gary* Court's clear holding that Pennsylvania automobile search and seizure law and federal Fourth Amendment jurisprudence are coextensive, *Houghton* neces-

**2.** *Gary* was a plurality opinion announcing the judgment of the Supreme Court. However, this Court has adopted the holdings of *Gary* in subsequent Opinions. *See Commonwealth v. Freeman,* 128 A.3d 1231, 1243 (Pa.Super. 2015); *In re I.M.S., supra.*

**3.** In *Houghton, supra,* during a proper traffic stop in Wyoming, the driver admitted that he had used a syringe, which was visible to the police, for drugs. The police removed the occupants from the vehicle and found a purse in the backseat that belonged to Houghton, one of the passengers. The police opened the purse and found inside a brown pouch and black wallet, both of which contained methamphetamine and a syringe.

The suppression court denied a suppression motion, and a jury convicted Houghton. The Wyoming Supreme Court reversed, concluding that the police did not have probable cause to believe Houghton had committed a crime, and thus, there was no probable cause to search her personal items. In concluding the police were permitted to search Houghton's belongings, and thus reversing the Wyoming Supreme Court, the U.S. Supreme Court reasoned that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search, and this rule applies to all containers within a car, without qualification as to ownership and without a showing of individualized probable cause for each container. *Houghton,* 526 U.S. at 302, 119 S.Ct. at 1301.

sarily now applies.[4]

*In re I.M.S.*, 124 A.3d at 317 (footnote added). Accordingly, we held in *In re I.M.S.* that, since the police had probable cause to conduct a warrantless search of the automobile for contraband, the police could also search the juvenile's drawstring bag where contraband could be concealed.

■■■ In light of the aforementioned controlling authority, we agree with the Commonwealth that in the case *sub judice* if Officer Gatewood had probable cause to search the vehicle at issue for contraband he was also permitted to search any container found therein where the contraband could be concealed, including Appellee's purse. *See Houghton*, 526 U.S. at 307, 119 S.Ct. at 1303–04 ("The sensible rule (and the one supported by history and case law) is that...a package [in the car] may be searched, whether or not its owner is present as a passenger or otherwise, because it may contain the contraband that the officer has reason to believe is in the car."). Thus, we proceed to an examination of whether such probable cause existed.

The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

*Commonwealth v. Lechner*, 454 Pa.Super. 456, 685 A.2d 1014, 1016 (1996) (citations omitted). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability*, and not a prima facie showing, of criminal activity." *Commonwealth v. Thompson*, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (quotation marks, quotations, and citations omitted) (emphasis in original).

■■■ In the case *sub judice*, on August 27, 2015, at 12:32 a.m., Officer Gatewood and his partner observed a vehicle containing four occupants parked near a bar in a high crime area known for gang violence, drug violence, and drug sales. After parking their police cruiser on the southwest side of the bar, Officers Gatewood and Farley walked up to the vehicle to determine "what was going on."[5] N.T., 9/7/16, at

---

4. In *In re I.M.S.*, we recognized that *"Houghton*...did not have a substantial impact in Pennsylvania when it was decided since, at the time, Pennsylvania case law interpreting Article I, § 8 of our state constitution provided Pennsylvanians with greater privacy protection." *In re I.M.S.*, 124 A.3d at 316. However, in light of *Gary*, we concluded in *In re I.M.S.* that *Houghton* now necessarily applies to Pennsylvania automobile search and seizures.

5. The police officers' initial approach of the vehicle was a mere encounter for which no level of suspicion was required. *See Common-*

*wealth v. Collins*, 950 A.2d 1041 (Pa.Super. 2008) (*en banc*) (holding mere encounter occurred where police, after noticing vehicle parked legally after sundown at roadside location, parked cruiser twenty feet away from the vehicle, and approached the vehicle); *Commonwealth v. McClease*, 750 A.2d 320, 325 (Pa.Super. 2000) (indicating a mere encounter occurs where there is no evidence of the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person[,] or the use of language or tone of voice indicating that compliance with the officer's request might be

5. As they approached, Officer Gatewood, an experienced officer with extensive exposure to marijuana during his police career, "detected the odor of burnt marijuana coming from the area around the vehicle." *Id.* at 6. Further, as he walked up the passenger side and shined his flashlight inside the vehicle,[6] he "observed a small bag of what appeared to be marijuana on the back seat passenger side floor." *Id.* Upon the police bringing the existence of the baggie of marijuana to the attention of the occupants, the driver "tried crawling into the back seat, between the seats,...and then she tried to exit the vehicle." *Id.* at 7.

■ Based on the totality of the circumstances, we conclude the officers had probable cause to believe the vehicle contained contraband, which was all that was necessary to justify the warrantless search of the vehicle, as well as the search of Appellee's purse where the contraband could be concealed. *See Houghton, supra; Gary, supra; In re I.M.S., supra.* Accordingly, we hold that the suppression court erred in suppressing the items seized from Ap-

pellee's purse, and we remand this case to the court of common pleas for trial.[7]

Order reversed; remanded; jurisdiction relinquished.

---

compelled") (quotation and emphasis omitted)).

6. Inasmuch as Officer Gatewood was otherwise in a lawful vantage point, his use of a flashlight to illuminate the darkness of the stopped vehicle did not transform his initial viewing of the marijuana into a search. *See Commonwealth v. Lehman,* 265 Pa.Super. 480, 402 A.2d 539, 541 (1979) (*en banc*).

7. It bears mentioning that the case relied upon by the trial court, *Shiflet, supra,* is distinguishable from the instant matter. For instance, in *Shiflet,* a trooper stopped a vehicle based on suspicion that the driver was driving under the influence of alcohol ("DUI"). *Id.* at 166, 670 A.2d at 129. The driver was arrested for DUI, and one passenger was arrested for disorderly conduct; the third occupant, Shiflet, was not arrested, and the trooper offered her a ride to the police barracks. *Id.* When Shiflet accepted, he seized her purse, opened

it, and found marijuana and drug paraphernalia. *Id.* In finding the evidence should be suppressed, our Supreme Court indicated "[t]here was no arrest of [Shiflet], whose property was searched. The search of [Shiflet] is simply too attenuated from the arrest of the driver and the other passenger to properly be considered to be 'incident' to the arrest of the driver and the other passenger." *Shiflet,* 543 Pa. at 170, 670 A.2d at 131.

In the case *sub judice,* by contrast, Trooper Gatewood, having probable cause to search the vehicle at issue, properly searched Appellee's purse since it was capable of concealing the object of his search. *See Houghton,* 526 U.S. at 307, 119 S.Ct. at 1304 ("We hold that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search.").