J. S33045/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| VALERIE ROSE TALLENT, | : | No. 1395 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 3, 2018,
in the Court of Common Pleas of Lycoming County
Criminal Division at No. CP-41-CR-0001753-2016

BEFORE:  LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED SEPTEMBER 06, 2019**

Valerie Rose Tallent appeals from the August 3, 2018 judgment of sentence entered in the Court of Common Pleas of Lycoming County following her conviction in a waiver trial of one count of possession of drug paraphernalia, an ungraded misdemeanor.[1]  The trial court imposed a $750 fine, plus all prosecution costs and payment of a $100 Act 198[2] fee.  We affirm.

_____

[1] 35 P.S. § 780-113(a)(32).

[2] Codified at 18 Pa.C.S.A. § 7508.1, Act 198 established The Substance Abuse Education and Demand Reduction Fund.  *Id.* at § 7508.1(a).  In the absence of undue hardship, Act 198 requires trial courts to impose a mandatory cost of $100 on any individual who, among other things, is convicted of violating The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-1, *et seq.*  *See* 18 Pa.C.S.A. § 7508.1(b).

The trial court set forth the following:

> [Officer Andrew] Stevens has been employed with the Williamsport City police for two years. Prior to joining the Williamsport City Police, he was an officer in Athens and Sayre for three and ½ years. At the time of the incident he had been policing for less than four years.
>
> On July 2, 2016, Stevens and his partner Officer Tyson Minier were in a marked patrol car east of Kramer Court when they observed a parked maroon Kia Sportage on Elmira Street. The lights were not on in the Kia and the officers were not aware whether the vehicle was running.
>
> The officers observed two occupants, [David Rute[3] and appellant]. Rute was the driver and [appellant] was the passenger, Stevens testified.
>
> Stevens proceeded to run the registration and found that the vehicle was registered to an address in Sunbury, PA. He also observed the vehicle drive around the block, which he believed was done in an effort to "elude police[."]
>
> Stevens observed the individuals approach 715 Elmira Street, and that Rute was covering his face. Stevens is aware from his patrol of the area that the 700-800 block of Elmira Street in Williamsport, Pennsylvania is an active area in the sale of heroin. He has made numerous arrests in this area. He is also aware from his personal experience that people from out of the area come to Williamsport generally to purchase heroin. Stevens suspected drug activity. Stevens saw the individuals approach a home that he knew to be vacant as his partner had recently been called to 715 Elmira Street regarding a burglary and the house was found to be vacant.

---

[3] The record reflects that Rute was also charged with possession of drug paraphernalia.

> Stevens observed [appellant] knock on the door of the unoccupied home. Stevens and his partner approached [appellant and Rute] and asked them why they were in town. They responded that they were here to see fireworks. No follow up questions were asked and the encounter concluded.
>
> Stevens and his partner looked into the Kia window and observed rubber bands, two small black and blue rubber bands that they know are used to package heroin. They proceeded to open the vehicle and search. Pursuant to the search, the officers opened a purse in the vehicle and found a syringe and a spoon, items typically used by [a] heroin user for the ingestion of heroin.

Trial court opinion, 5/16/17 at 1-3.

The record reflects that appellant filed an omnibus pretrial motion to suppress the evidence obtained as a result of the search. Following a hearing, the trial court denied the motion. After her conviction, appellant did not file post-trial motions. Appellant did, however, file a timely notice of appeal. The trial court then ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court then filed a statement in lieu of a Rule 1925(a) opinion wherein it relied on its May 16, 2017 opinion that set forth its reasons for its denial of appellant's motion to suppress.

Appellant raises the following issue for our review:

> Did the trial court err in denying [a]ppellant's motion to suppress the evidence arising out of an encounter with Williamsport police on July 2, 2016?

Appellant's brief at 7.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012) (citations omitted).

Appellant specifically complains that "all of the facts taken together do not rise to the probable cause required to effect the search." (Appellant's brief at 13.)

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the

> officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa.Super. 2017) (citation omitted). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a prima facie showing, of criminal activity." ***Id.*** (citation omitted; emphasis in original).

At the suppression hearing, Officer Stevens testified that he and his partner were patrolling an area that is "very active for the sale of heroin" in a marked vehicle at night. (Notes of testimony, 3/30/17 at 8-10.) When they came across the Kia Sportage in which appellant and Rute were sitting, Officer Stevens testified that it appeared to him that Rute was attempting to obscure his face. (***Id.*** at 8-9.) The officer believed that Rute's conduct was an attempt to "hide [his] face or [his] identity because [he is] in that area for no good reason." (***Id.*** at 11.) After running the Kia's license plate number, the officers discovered that the vehicle was registered to an address in Sunbury, Pennsylvania. (***Id.*** at 10.) Officer Stevens explained that in his

> experience people from out of the area, Sunbury, Lewisburg, Canton, I mean, anywhere from out of the area it's common for people to come into Williamsport to purchase heroin from out of the area because it's cheaper. . . . So seeing a car from Sunbury, two people occupied in that vehicle in that area is suspicious to me for drug activity.

*Id.* at 11.

Officer Stevens then observed appellant and Rute walk up the steps to a home that Officer Stevens knew was vacant and knock on the door. (*Id.* at 12.) Officer Stevens explained that he has "seen numerous times where the similar scenario had happened where people kind of get nervous when they're in the area, do something wrong, so they make it look like they're there to visit somebody and they knock on the door." (*Id.*) The officers then drove down the street, came back around, and encountered appellant and Rute on a corner one block north of where the Kia was parked. (*Id.* at 13.) The officers asked appellant and Rute what they were doing in the area. (*Id.* at 14.) Appellant responded that she was in the area to see "fireworks or something." Rute responded that he was in the area to visit a friend. At that point, Officer Minier walked to the Kia, Officer Stevens drove around the block, and appellant and Rute continued to walk away from the Kia. (*Id.* at 15-16.)

Officer Stevens then made his way back to the Kia where Officer Minier was standing. (*Id.* at 16.) Officer Minier told Officer Stevens that there was heroin packaging in plain view in the vehicle. Officer Stevens looked into the driver's side window and observed

> at least two, they're small black and blue different colored rubber bands, they're very small, they package a bundle of heroin together, 10 bags of heroin, and that's what they're used for in my experience. I've never seen them for any other reason but to store heroin.

*Id.* at 17.

After the officers observed the rubber bands, which Officer Stevens described as "the size of your pinky," they opened the driver's door and searched the vehicle. (*Id.* at 17-18.)

In her brief to this court, appellant maintains that the officers did not have probable cause to search the Kia because "[t]here are innocent explanations for each and every fact that the Commonwealth alleges establish probable cause." (Appellant's brief at 13.) For example, appellant explains that she and Rute did not provide conflicting answers as to why they were in the area that night; rather, "[t]heir answers are supplementary to each other." (*Id.* at 12.) Appellant also contends that even though Officer Stevens believed the house that appellant and Rute approached was vacant, it was "equally reasonable to believe the house is no longer vacant if two civilians approach and knock on the door." (*Id.*) Appellant suggests that, at the very least, the officers should have "reassess[ed] whether the house was really vacant." (*Id.*) Appellant clearly misapprehends the probable cause determination, which requires that the facts and circumstances **within the police officer's knowledge** would warrant a reasonably cautious person to believe a crime has been or is being committed. *Runyan*, 160 A.3d at 837.

Here, in considering the totality of the circumstances, the trial court determined that the facts and circumstances within Officer Stevens' knowledge were sufficient to warrant a person of reasonable caution to believe

a crime had been or was being committed. Our review of the record demonstrates that the record supports the trial court's factual findings and its legal conclusions are correct.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019