J-A07004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE SAMBANA | : | |
| | : | |
| Appellant | : | No. 817 EDA 2018 |

Appeal from the Judgment of Sentence March 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006230-2017

BEFORE: OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 03, 2019**

Appellant, Jose Sambana, appeals from the judgment of sentence entered on March 2, 2018 in the Criminal Division of the Court of Common Pleas of Philadelphia County following his bench trial convictions for possession of heroin and fentanyl with the intent to deliver (PWID)[1] and knowing and intentional possession of controlled substances (K&I).[2] We affirm.

On January 11, 2017, Appellant was arrested and charged with PWID, K&I, and driving with a suspended license. After a preliminary hearing at which the offense of driving with a suspended license was dismissed for lack

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

---

\* Former Justice specially assigned to the Superior Court.

of evidence, the Commonwealth filed an information charging Appellant with PWID and K&I.

Appellant filed a motion to suppress physical evidence recovered during searches of his person and vehicle, including 39 packets of heroin and fentanyl and United States currency. On January 10, 2018, the trial court convened a hearing to consider Appellant's motion to suppress. After the court denied suppression, Appellant waived his right to a jury and proceeded to trial. The court found Appellant guilty of PWID and K&I. On May 2, 2018, the court imposed a sentence of two to seven years' incarceration on Appellant's PWID conviction. This timely appeal followed. After Appellant filed his concise statement of errors complained of on appeal, *see* Pa.R.A.P. 1925(b), the trial court issued its opinion.

Appellant raises two issues on appeal:

[Whether the trial court erred in denying Appellant's motion to suppress where officers lacked reasonable suspicion to believe Appellant was armed and dangerous or exceeded the scope of a protective frisk by removing a tray covering a vehicle console and searching the area beneath it?]

[Whether the trial court erred in denying Appellant's motion to suppress where officers lacked probable cause and a warrant to search underneath the console area of Appellant's vehicle and to open a bag of Jolly Ranchers candy?]

Appellant's Brief at 3.

Appellant raises two claims in support of his contention that the trial court violated his constitutional rights in denying his motion to suppress. First, Appellant claims that police officers lacked reasonable suspicion to conduct a

protective search of his vehicle or exceeded the permissible scope of an initially valid search. Second, Appellant argues that police officers lacked both a warrant and probable cause to justify the retrieval and search of a bag of Jolly Rancher candy recovered from a void located underneath the console area of Appellant's vehicle. We disagree.

We review orders denying a motion to suppress under the following standard of review:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (internal quotations and citations omitted).

We have carefully reviewed the certified record, the submissions of the parties, and the trial court's Rule 1925(a) opinion. Based upon our review, we adopt the trial court's factual recitation and we conclude that the record supports the factual findings of the trial court and that its legal conclusions

are correct. In particular, the trial court correctly concluded that the officers had reasonable suspicion to conduct a protective sweep of Appellant's vehicle. *See* Trial Court Opinion, 6/13/18, at 5 (crediting police testimony that Appellant's vehicle had heavily tinted windows, that Appellant appeared to move about the interior compartment, that Appellant reached toward the center console area, that Appellant did not comply with multiple commands that he open his window, and that officers could not see what Appellant was reaching for inside the vehicle). The trial court also correctly determined that the area beneath the center console (including the location of the Jolly Ranchers candy bag) fell within the scope of a permissible protective sweep since the cup holder tray atop the console had been pried open and could reasonably have concealed a weapon. *See id.* at 6. Lastly, the court properly determined that the officers had probable cause to believe that the Jolly Ranchers candy bag contained evidence of a crime since the police observed it in an area of the vehicle not designed for storage and not ordinarily accessible to vehicle occupants. *See id.* at 7. In sum, because the trial court adequately and accurately addressed each of the issues raised on appeal, we adopt its opinion and conclusions as our own. We instruct the parties to attach the trial court's June 13, 2018 opinion to each future filing pertaining to our disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/19

FILED

018 JUN 13 PM 2: 43

FICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

JOSE SAMBANA

:
:
:
:
:
:
:
:

CP-51-CR-0006230-2017

CP-51-CR-0006230-2017 Comm. v. Sambana, Jose
Opinion

8122861591

OPINION

BRONSON, J.                                                      June 13, 2018

On January 10, 2018, following a non-jury trial before this Court, defendant Jose
Sambana[1] was convicted of one count each of possession with intent to deliver a controlled
substance ("PWID") (heroin and fentanyl) (35 P.S. § 780-113(a)(30)) and knowingly and
intentionally possessing a controlled substance ("K&I") (heroin and fentanyl) (35 P.S. § 780-
113(a)(16)). On March 2, 2018, the Court imposed a sentence of two to seven years
imprisonment for the PWID charge.[2] Defendant did not file post-sentence motions.

Defendant has now appealed from the judgment of sentence entered by the Court on the
grounds that: 1) the Court erred by denying defendant's motion to suppress the physical
evidence; 2) the Court abused its discretion by qualifying Officer Debarberie as an expert
witness; 3) the Court abused its discretion by requiring the Commonwealth to reopen the motion
to suppress and recall Officer Debarberie; and 4) the evidence was insufficient to sustain the
PWID conviction. Statement of Errors Complained of on Appeal ("Statement of Errors") at ¶¶

---

[1] At defendant's suppression hearing, defendant indicated that the correct spelling of his name was Jose Sambrana.
N.T. 1/10/18 at 5. It appears both ways in the record.
[2] Defendant's K&I conviction merged for sentencing purposes.

4(a)-4(d). For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia police officers Sarah Debarberie,[3] James Saxton, and James Trappler. Defendant presented the testimony of David Leff. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On July 11, 2017, Officer Debarberie and her partner, Officer Saxton, were on vehicle patrol on the 3100 block of Jasper Street in Philadelphia, when they spotted a white GMC Yukon turn onto Jasper Street and then make an abrupt left-hand turn without signaling. N.T. 1/10/18 at 11-12. Officers Debarberie and Saxton subsequently pulled the vehicle over on the 1900 block of Clementine Street. N.T. 1/10/18 at 11.

Officer Saxton approached the driver's side of the vehicle, while Officer Debarberie approached the passenger's side. N.T. 1/10/18 at 91. Because the vehicle's windows were heavily tinted, the officers could only make out the driver's silhouette. N.T. 1/10/18 at 11. However, they were able to observe the driver moving around in the vehicle and reaching back and forth toward the center console. N.T. 1/10/18 at 11, 31, 92. Officer Saxton ordered defendant to put down his window multiple times; however, defendant did not comply. N.T. 1/10/18 at 11-12. Therefore, Officer Debarberie, in fear for her partner's safety, opened the passenger side door of the vehicle. N.T. 1/10/18 at 12. Officer Saxton then opened the driver's side door. N.T. 1/10/18 at 12-13.

---

[3] Officer Debarberie's testimony from defendant's suppression hearing, with the exception of any hearsay testimony, was incorporated into the Commonwealth's case-in-chief. N.T. 1/10/18 at 85.

2

Once the doors were open, the officers observed defendant reach into the center console. N.T. 1/10/18 at 92. Officer Saxton ordered defendant to stop what he was doing, and to provide the officers with his license, registration, and insurance. *Id.* Defendant complied, but informed the officers that he did not have a driver's license, and then again proceeded to reach into the center console. N.T. 1/10/18 at 12, 92. Officer Saxton once more ordered defendant to stop; however, defendant did not comply. N.T. 1/10/18 at 92. Therefore, Officer Saxton removed defendant from the vehicle. *Id.* As he was being removed, defendant said to the officers, "I don't sell drugs, I don't sell drugs." N.T. 1/10/18 at 24.

At that same time, Officer Debarberie observed that the cup holder tray that was connected to the center console had been manipulated and disconnected from its frame, allowing access into the space beneath the tray. N.T. 1/10/18 at 13-14. Since defendant had been reaching in and around that area, Officer Debarberie lifted the tray and looked into the space to search for weapons. N.T. 1/10/18 at 14-22, 40, 58. There, in the void under the tray, in an area where electrical wires were running, she found a Jolly Ranchers candy bag. N.T. 1/10/18 at 21-22. Based on defendant's spontaneous statement, "I don't sell drugs," defendant's movements in the car, the manipulation of the tray allowing access to a void not designed for storage, and because the bag was hidden in that void, the officer believed that the bag was related to narcotics activity. N.T. 1/10/18 at 59. The officer therefore retrieved and opened the bag, finding thirty-nine clear plastic packets containing heroin and fentanyl. N.T. 1/10/18 at 22, 86. In addition, Officer Debarberie recovered $125 in various denominations from a cup holder in the car. N.T. 1/10/18 at 25. Finally, when defendant was searched incident to arrest, Officer Saxton recovered $343 in various denominations from defendant's person. N.T. 1/10/18 at 25, 89-90, 94-95; Commonwealth Exhibit C-2.

3

According to Officer James Trappler, an expert in narcotics and narcotics packaging, the number of packets, the street value of the seized drugs, the denominations of the currency found on defendant and in the car, the absence of drug paraphernalia, and other factors, led him to conclude that the drugs at issue were possessed by defendant with intent to deliver. N.T. 1/10/18 at 96-101.

## II. DISCUSSION

### A. Motion to Suppress

Defendant first claims that the trial court erred by denying defendant's motion to suppress the physical evidence. Statement of Errors at ¶ 4(a). "In reviewing a ruling on a suppression motion, the standard of review is whether the factual findings and legal conclusions drawn therefrom are supported by the evidence." *Commonwealth v. Wholaver*, 989 A.2d 883, 896 (Pa. 2010) (quoting *Commonwealth v. Bronshtein*, 691 A.2d 907, 913 (Pa. 1997)). Additionally, "[w]here the record supports the findings of the suppression court, [the reviewing court] is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Ligons*, 971 A.2d 1125, 1148 (Pa. 2009).

Defendant asserts three bases for his claim that the Court erred in denying his motion to suppress the physical evidence. First, he argues that the police "lacked reasonable articulable suspicion that [defendant] was armed and dangerous when they opened the car doors and removed [defendant] from his vehicle after stopping him for a minor traffic violation." Statement of Errors at ¶ 4(a)(i). This claim is without merit.

"When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the drive[r] to step out of the vehicle as a matter of right. Further, an officer has the right to conduct a weapons search of an automobile if

4

there is a reasonable belief that the suspect is dangerous and that the suspect might gain immediate control of weapons." *Commonwealth v. Boyd*, 17 A.3d 1274, 1277 (Pa. Super. 2011) (internal citations and quotations omitted); *see also Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994) (requiring that officer's belief must be based on specific articulable facts); *Commonwealth v. Cartagena*, 63 A.3d 294, 300 (Pa. Super. 2013) (*en banc*) (noting that search is limited to the passenger compartment of the vehicle, where a weapon could be placed). In determining whether the officer's belief was reasonable, the Court looks to the totality of the circumstances and considers such factors as whether the stop occurred in a high crime area, the time of day, whether the defendant immediately stopped the vehicle, the defendant's behavior, and whether the defendant made movements inside of the vehicle. *Commonwealth v. Buchert*, 68 A.3d 911, 913-16 (Pa. Super. 2013).

Here, the evidence adduced at the suppression hearing established that the officers held a reasonable belief that defendant was dangerous and that he might have access to weapons in his vehicle. Officer Debarberie testified that after defendant's vehicle was stopped for the failure to use a turn signal, she and Officer Saxton approached the vehicle, but could not see defendant due to the vehicle's windows being heavily tinted. N.T. 1/10/18 at 11. Officer Debarberie could, however, make out defendant's silhouette and was able to observe defendant moving in the vehicle and reaching towards the center console. N.T. 1/10/18 at 11-12, 31, 92. Additionally, while Officer Saxton ordered defendant to put down his window multiple times, defendant did not comply. N.T. 1/10/18 at 11-12. Officer Debarberie testified that at that point, she feared for her partner's safety because she could not see what defendant was reaching for in the vehicle. N.T. 1/10/18 at 12. Under these circumstances, the officers had ample reason to believe that in the interests of their safety, it was necessary to enter the vehicle and conduct a search for

5

weapons. Finally, as it is uncontested that defendant was lawfully stopped pursuant to a violation of the motor vehicle code, the officers were free to remove defendant from the vehicle at that time. *Boyd*, 17 A.3d at 1277.

Next, defendant claims that the officers "lacked probable cause to disassemble the console of appellant's vehicle, after noticing a one-fourth inch gap, and also to remove, examine, and look inside of a non-translucent candy bag, where packets of heroin were recovered." Statement of Errors at ¶ 4(a)(ii). This claim is also without merit.

As stated above, when conducting a weapons search in a vehicle, officers may search anywhere within the compartment of the vehicle where a weapon could be placed. *Cartagena*, 63 A.3d at 300. Here, Officer Debarberie testified that while defendant was being removed from his vehicle, the officer observed that the cup holder tray within the center console had been pried up from its frame, exposing a quarter of an inch gap. N.T. 1/10/18 at 14. Based on her experience and training, Officer Debarberie was aware that there was a hidden space underneath the tray. As discussed above, because Officer Debarberie reasonably believed that defendant was dangerous and that a weapon could have been concealed in the space, she was permitted to do a protective search of the area for weapons regardless of whether there was probable cause to conduct a search at that time. *See* pp. 4-6, *supra*. Because the officer observed the Jolly Ranchers candy bag during the lawful protective search, her observation of the bag was entirely lawful.

Because the candy bag was not likely to contain a weapon, the warrantless search of the bag could not be justified as part of the protective sweep. However, the officer was fully entitled to open and search the bag under the automobile exception to the warrant requirement. *See Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (holding the federal automobile exception to the

6

warrant requirement to apply under Pennsylvania law). Under that exception, officers having probable cause to believe that there is contraband in a car may search not only the entire car, but also any packages and containers found within the car. *See Commonwealth v. Runyan*, 160 A.3d 831, 837 (Pa. Super. 2017); *In re I.M.S.*, 124 A.3d 311, 316-17 (Pa. Super. 2015). Once Officer Debarberie, during her protective search of the car, observed a Jolly Ranchers candy bag in an area of the car not designed for storage, not ordinarily accessible to occupants of the car, and where electrical wires were present, she unquestionably had probable cause to believe that the car contained evidence of a crime. *Runyan*, 160 A.3d at 837 (probable cause to search a car exists where the totality of the circumstances would warrant a person of reasonable caution to believe that there is contraband in the car). Accordingly, no warrant was required to open and search the candy bag. *Id.*

Finally, defendant claims that because the US currency found on his person and in his vehicle was "fruit of the poisonous tree," it also should have been suppressed. Statement of Errors at ¶ 4(a)(iii). The premise of this claim is that the search leading to the seizure of the drugs was unlawful. Because the search leading to the discovery and seizure of the drugs was entirely lawful, there could be no illegal fruits derived from that search.

Accordingly, all physical evidence was properly seized and defendant's motion to suppress the physical evidence was properly denied. No relief is due.

B. *Expert Witness Officer Sarah Debarberie*

Defendant next claims that the Court abused its discretion by "qualifying Officer Sarah Debarberie as an expert in the field of 'console cup holder devices being used to conceal drugs' based on a one-week conference she attended on the topic." Statement of Errors at ¶ 4(b). This claim is without merit.

Pennsylvania Rule of Evidence 702 allows a witness to testify in the form of an opinion as an expert if: "a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson; b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and c) the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702. "The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an opinion based on training and experience." *Commonwealth v. Malseed*, 847 A.2d 112, 114 (Pa. Super. 2004) (internal quotations and citations omitted). Finally, the qualification of an expert rests with the discretion of the trial court and will only be disturbed upon an abuse of discretion. *Id.* at 115.

At defendant's suppression hearing, which was later incorporated into the trial, the Commonwealth presented the testimony of Officer Debarberie as an expert in the area of console cup holder devices that are used to conceal drugs. N.T. 1/10/18 at 13-22. As to her qualifications, Officer Debarberie testified that in addition to recently attending a week-long conference on secret compartments in vehicles that are used to conceal criminal activity, she also received several trainings throughout her career as a police officer on the subject. N.T. 1/10/18 at 14, 17. The trainings covered how certain vehicles are designed, where natural spaces are located within these vehicles, and how to identify if such a space has been tampered with. N.T. 1/10/18 at 14, 17-18. Moreover, as defendant was driving a 2007 GMC Yukon at the time of his arrest, Officer Debarberie confirmed that she specifically received training on GM vehicles, and

8

from that training, she learned that in GM vehicles, there is a natural space in the center console area and dash area. N.T. 1/10/18 at 17-18.

Accordingly, Officer Debarberie clearly possessed specialized knowledge in the area of secret compartments in vehicles that was beyond the knowledge of an average layperson, and allowed her to express opinions very helpful to the trier of fact. In particular, her expert testimony assisted the Court in understanding how defendant tampered with the center console of the vehicle to hide drugs and how the officer was able to spot the secret compartment. Accordingly, no relief is due.

### C. Reopening Motion to Suppress

Defendant next claims that the Court abused its discretion and its role as a neutral magistrate when it "require[ed] the Commonwealth to reopen the motion to suppress and recall [Officer Debarberie], after the Commonwealth had rested and arguments were made by both sides, where the Commonwealth had otherwise failed to meet its burden in the motion to suppress." Statement of Errors at ¶ 4(c). This claim is without merit.

"The general rule is that prior to rendering its decision, a court may in its discretion permit either side to reopen its case to present additional testimony." *Commonwealth v. Griffin*, 412 A.2d 897, 903 (Pa. Super. 1979) (noting that the decision to reopen a case should be even more flexible where the issue is not guilt, but instead, the admissibility of evidence); *see also Commonwealth v. Branch*, 437 A.2d 748, 750-51 (Pa. Super. 1981) (*en banc*) (concluding suppression court is permitted to reopen a hearing to receive additional testimony that was inadvertently omitted by the Commonwealth). Moreover, the court may *sua sponte* reopen the record and allow the parties to supplement it, if the court believes that such must be done in order to avoid a miscarriage of justice. *Commonwealth v. Safka*, 141 A.3d 1239, 1249-50 (Pa.

9

2016). A court's decision to reopen the record will only be reversed upon a showing of an abuse of discretion. *Id.* at 1248.

Here, following argument at defendant's suppression hearing, the Court opined that the record was not clear regarding Officer Debarberie's basis for taking and opening the Jolly Ranchers candy bag that she found in the space beneath the center console. N.T. 1/10/18 at 52-55. The parties did not agree, and the Court did not recall, whether the officer testified why she had looked in the bag. N.T. 1/10/18 at 46, 52-56. For that reason, the Court concluded that it was in the interest of justice to permit the Commonwealth to reopen the record and recall Officer Debarberie to answer additional questions on the issue, before the Court rendered its decision. N.T. 1/10/18 at 55-56. Moreover, as this was a pre-trial suppression hearing, there was no potential that the additional presentation of evidence would disrupt the proceedings, nor prejudice defendant in any way. Accordingly, the Court did not abuse its discretion when it reopened the record *sue sponte* to seek additional clarification on Officer Debarberie's basis for taking and opening the candy bag. No relief is due.

*D. Sufficiency of the Evidence*

Finally, defendant claims that the evidence was insufficient to sustain a conviction for PWID because "the Commonwealth failed to prove beyond a reasonable doubt that [defendant] had the intent to deliver heroin/fentanyl." Statement of Errors at ¶ 4(d). This claim is without merit.

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa.

10

Super. 2012). In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Id.* Finally, "[i]f the record contains support for the verdict, it may not be disturbed." *Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super. 2005) (quoting *Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2000), *appeal denied*, 782 A.2d 542 (Pa. 2001)).

To sustain a conviction for PWID, the Commonwealth is required to prove "that the defendant possessed a controlled substance and did so with the intent to deliver it." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005). The requisite intent may be inferred from all of the facts and circumstances of the case, including the method of packaging, the form of the drug, and the defendant's behavior. *Id.* Also relevant are the quantity of drugs possessed and the lack of drug paraphernalia. *Commonwealth v. Johnson*, 782 A.2d 1040, 1040 (Pa. Super. 2001). Where no transactions are observed, expert testimony may be considered by the fact-finder on the issue of intent to deliver. *Commonwealth v. Carter*, 589 A.2d 1133, 1135 (Pa. Super.), *appeal denied*, 597 A.2d 1151 (Pa. 1991).

Here, Officer Saxton testified that when he and Officer Debarberie pulled defendant over for failing to use a turn signal, the officers observed defendant reach into his center console. N.T. 1/10/18 at 91-92. When defendant did not comply with Officer Saxton's orders to stop what he was doing, the officer removed defendant from the vehicle. N.T. 1/10/18 at 92. When he was being removed from the vehicle, defendant spontaneously told the officers, "I don't sell drugs." N.T. 1/10/18 at 24, 95. Furthermore, when Officer Debarberie searched defendant's car, she discovered a Jolly Ranchers candy bag, hidden beneath the center console, containing thirty-

11

nine clear plastic packets of heroin and fentanyl. N.T. 1/10/18 at 22, 59, 86. In addition, the officers recovered $125 in various denominations from a cup holder in the vehicle and $343 from defendant's person. N.T. 1/10/18 at 25, 89-90, 94.

At trial, the Commonwealth called Officer James Trappler as an expert in narcotics and narcotics packaging. Officer Trappler had been a narcotics officer for 30 years and a police officer for 37 years. He stated that, in his expert opinion, the number of packets containing heroin and fentanyl, the street value of the seized drugs, defendant's proximity to where heroin is sold, the various denominations of the U.S. currency recovered, and the lack of user paraphernalia, established that the drugs at issue were possessed with the intent to deliver. N.T. 1/10/18 at 98-101. This was ample evidence to allow a reasonable fact-finder to conclude, beyond a reasonable doubt, that defendant both possessed a controlled substance and did so with the intent to deliver. *See Commonwealth v. Ratsamy*, 934 A.2d 1233, 1236-38 (Pa. 2007); *Commonwealth v. Robinson*, 582 A.2d 14, 17 (Pa. Super. 1990), *appeal denied*, 598 A.2d 282 (Pa. 1991). While defendant called a drug expert who reached a contrary opinion, N.T. 1/10/18 at 110-124, the Court, as factfinder, was entitled to credit the testimony of the Commonwealth expert, and to find the defense expert not to be credible. *Ramtahal*, 33 A.3d at 607.

Accordingly, defendant's sufficiency of the evidence claims should be rejected.

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

12